UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


CIVIL ACTION NO. 3:04CV-195-MO


JERRY W. DAVIS                                                                    PLAINTIFF

V.

SIEMENS MEDICAL SOLUTIONS USA, INC.                              DEFENDANT


## **MEMORANDUM OPINION**

Following a verdict in favor of the plaintiff, Jerry W. Davis, Siemens Medical Solutions

USA ("Siemens") renewed its motion for judgment as a matter of law and, in the alternative,

asked for a new trial (*see* docket no. 114).  It is rare for a court to grant such a motion in a civil

matter, particularly with respect to an issue that has been adjudicated by a jury.  Yet, after

reviewing Siemens' motion and Mr. Davis's response thereto, reviewing the trial transcripts, and

considering prior rulings made in this matter, this court concludes that Mr. Davis's fraud claim

fails as a matter of law and, accordingly, there existed no legally sufficient basis for the jury to

find that Mr. Davis reasonably relied on any misrepresentations made by Siemens.

The court has not reached this decision lightly, without being mindful of the doctrine of

the law of the case, nor without considerable concern about possibly invading the province of a jury.

Nevertheless, when this court has erred as a matter of law, or a jury has reached a decision that is

against the clear weight of the evidence, a judge must correct any errors and ensure that justice is

served.

**I.**

All facts underlying this case were well-summarized in the district court's memorandum opinion disposing of all but one of Mr. Davis's claims.  *See* docket no. 56, reported as *Davis v. Siemens Medical Solutions USA, Inc.*, 399 F. Supp. 2d 785 (W.D. Ky. 2005).  Accordingly, this court will restate in this opinion only those facts relevant to an understanding of Siemens's present motion.

In the fall of 2002, Siemens offered Mr. Davis, who was then one of its Division Marketing Specialists, a sales executive position.  Although he had worked for Siemens as a commission-earning salesperson in the past, Mr. Davis's position at the time of the offer was salaried, with an annual compensation of $85,000.  The compensation for the new position he was offered was once again commission-driven, with a lower base salary of $65,000, a one-year guaranteed salary rider of $35,000 (the "Guarantee Rider"), and the opportunity to earn commissions on certain sales.

The offer was verbally communicated to Mr. Davis in September 2002 during a meeting between him and Mr. Douglas Spotts, one of Siemens's National Sales Managers.  Siemens confirmed its offer in a writing dated November 11, 2002, which expressly incorporated the Guarantee Rider, which in turn incorporated Mr. Davis's Compensation and Commission Plan (the "Plan") that described the basis by which his commissions would be calculated.  On November 14, 2002, Mr. Davis confirmed in writing his acceptance of the offer letter, the Guarantee Rider, and the Compensation and Commission Plan.

The parties agree that Mr. Davis was assigned a national territory and that his Compensation and Commission Plan states that Mr. Davis would earn commissions only on those sales within his territory for which he was "personally and directly responsible."   Prior to

trial, Mr. Davis argued that the phrase "personally and directly responsible" was ambiguous and could be interpreted, particularly with the aid of parol and other extrinsic evidence, to entitle Mr. Davis to commissions on sales for which he did not have direct and unmediated involvement. *See Davis*, 399 F. Supp. 2d at 792.  The district court disagreed with Mr. Davis's assertion of ambiguity, and ruled that the phrase "personally and directly responsible" is "absolutely clear and unambiguous" and that its meaning within the context of the Compensation Plan "is not subject to serious dispute."  *Id.* at 792-93.  Accordingly, the district court dismissed with prejudice all claims for which Mr. Davis's advocated interpretation of the Compensation and Commission Plan's terms was necessary (in whole or in part) for him to prevail.[1]

The district court permitted only one claim to survive summary judgment – whether Siemens fraudulently misrepresented the terms of Mr. Davis's commission structure to induce him to accept his new job.  Mr. Davis asserted that Mr. Spotts promised him that he would receive commissions on all sales made to national accounts, regardless of whether he was responsible for securing the sale.  As noted previously, the Compensation and Commission Plan Mr. Davis accepted says no such thing, and cannot reasonably be interpreted otherwise.  Yet, because Siemens denied making the alleged misrepresentation, the district court determined that a question of fact existed with respect to Mr. Davis's fraudulent misrepresentation claim, because one of six necessary elements[2] of a fraud claim is the making of a materially false statement.  *See Davis*, 399 F. Supp. 2d at 800.  The district court did not evaluate in any detail

---

[1]The district court also dismissed Mr. Davis's claims for breach of fiduciary duty and intentional infliction of emotional distress.

[2]The elements of a fraudulent misrepresentation claim in Kentucky are (1) a representation of a material fact; (2) that was false; (3) that the defendant either knew was false, or made recklessly; (4) that was made to induce the plaintiff to act upon it; (5) that was reasonably relied upon; and (6) that resulted in damages to the plaintiff.  *See, e.g., United Parcel Service Co. v. Rickert,* 966 S.W.2d 464, 468 (Ky. 1999); *Vest v. Goode*, 209 S.W.2d 833, 836 (1948); *see also Moore, Owen, Thomas & Co. v. Coffey,* 992 F.2d 1439, 1447 (6th Cir. 1993).

the other necessary elements of the fraud claim, except to note that Mr. Davis alleged that he relied on the misrepresentation and that Mr. Davis appeared to meet "the bare minimum for a *prima facie* case of misrepresentation."  *Id*.  Notably, the district court did not explicitly evaluate whether Mr. Davis *reasonably* relied on the misrepresentation.[3]

On the eve of trial, and facing an unanticipated scheduling conflict, the district court asked the parties to consider allowing a magistrate judge to preside over the trial of this matter. They did and, accordingly, the trial judge was not the same judge who had previously evaluated the merits of Mr. Davis's claims and made rulings on all pre-trial motions, including Siemens's motion for summary judgment.  Thus, when Siemens moved for directed verdict at the close of its proof, the trial judge was reluctant to disturb what he considered to be the law of the case, as established by the district court in its prior evaluation of Siemens's motion for summary judgment, and without the aid of contemporaneous trial transcripts, concluded that there existed one or more issues of fact requiring the jury's determination.

## II.

Post-trial S,iemens requests two alternative forms of relief.  Siemens principally asks the court to reconsider its denial of Siemens's motion for judgment as a matter of law, and asks the

---

[3]An argument can be made that the district court did evaluate whether Mr. Davis's reliance was reasonable and determined that it was not.  One of Mr. Davis's alternate theories of relief was that he was entitled to recover the commissions allegedly promised him on the theory of promissory estoppel.  To succeed, such a claim would also require proof of *reasonable* reliance.  *See Davis*, 399 F. Supp. 2d at 795.  The district court dismissed Mr. Davis's claim of promissory estoppel on the following basis, however:

> Promissory estoppel is meant for cases in which a promise, not being supported by consideration, would be unenforceable under conventional principles of contract law.  When there is an express contract governing the relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill.

*Id.* at 798.  The court did not explicitly evaluate whether any reliance on Mr. Spotts's promise was reasonable, but its rejection of Mr. Davis's promissory estoppel claim is consistent with this court's conclusion that there should be no extra-contractual recovery by Mr. Davis.

court to set aside the jury's determination that Siemens made a fraudulent misrepresentation to Mr. Davis.  Failing that, Siemens asks for a new trial because certain of the statements and evidence pertaining to alleged mistreatment of Mr. Davis by Tom Riesenberg, one of his superiors at Siemens, may have tainted the jury's verdict.  In this court's opinion, the latter argument is not sufficiently meritorious to warrant extensive consideration.[4]  Siemens's principal request, however, both warrants and has received weighty and careful consideration.

Federal Rule of Civil Procedure 50(a)(1) states that judgment as a matter of law is not proper unless "no reasonable juror could have found for the non-moving party."  Similarly, it has long been the rule in the Sixth Circuit that the same standard applies to a renewed motion for judgment as a matter of law filed after the return of a jury verdict.  *See, e.g., United States v. Alpine Industries, Inc.*, 352 F.3d 1017, 1022 (6th Cir. 2003)(citations omitted).  In applying this standard, however, the court cannot weigh the credibility of the witnesses or substitute its judgment for that of the jury.  *Id.*  Rather, it must view the evidence in the light most favorable to

---

[4]The court is not convinced that any such evidence was improperly or erroneously admitted, or, if so, that Siemens did not waive its right to object.  This is not to say, however, that any evidence pertaining to the alleged behavior of Mr. Riesenberg did not affect the jury.  Although the claim at trial sounded in tort, the jury chose not to award punitive damages and, accordingly, the method of measuring Mr. Davis's damages was the same as if he had proceeded on a breach of contract action.  In other words, the jury was instructed to award Mr. Davis the benefit of his alleged bargain, namely the amount to which he would have been entitled had the promise allegedly used to induce Mr. Davis to accept his new position been true.  *See* Jury Instruction No. 2 (docket no. 109).  If the promise that Mr. Davis would earn commissions on all sales made to national accounts were true, the evidence was uncontroverted that he would have been entitled to over 1.5 million dollars.  *See, e.g.,* Not. of Reduction of Sought Damages (docket no. 104); Tr. vol. II-B at 39-40.  The award thus should have been all or nothing.  Based on the claim and sales figures presented, there simply was no evidentiary support for any other damages calculation.  Inexplicably, however, the jury awarded Mr. Davis $200,000 in compensatory damages.  One could interpret this figure as suggesting that the jury did not find Mr. Davis's fraud claim fully credible, yet felt he was owed something for his alleged mistreatment by his supervisors at Siemens.  Whether this interpretation is accurate or not, one can never know.  The court simply notes that there is no readily apparent logical basis for the jury's damages calculations, and thus Siemens's' alternate argument, while not legally viable as presented, may not be entirely misplaced. .

the non-moving party (*i.e.*, Mr. Davis) and give him the benefit of all reasonable inferences. *Id.*

Before weighing the evidence, however, the court must first address what Mr. Davis was asked to prove to the jury. In civil cases, the plaintiff is typically asked to prove his claim by a preponderance of the evidence. The preponderance standard is relatively low – it simply means that a particular claim is more likely than not. By contrast, a plaintiff alleging fraudulent misrepresentation, bears the heightened burden of proving his case by "clear and convincing evidence." *See, e.g., United Parcel Service Co. v. Rickert,* 966 S.W.2d 464, 468 (Ky. 1999). Kentucky's highest court, to which this court must turn for a definition of that standard,[5] has declared that "'proof by clear and convincing evidence' is incapable of a definition any more detailed or precise than the words involved," but requires the party with the burden of proof "to produce evidence substantially more persuasive than a preponderance of the evidence, but not beyond a reasonable doubt." *Fitch v. Burns*, 782 S.W.2d 618, 622 (Ky. 1990).

The jury was asked to determine whether Mr. Davis had proven each of the following six necessary elements of his claim by clear and convincing evidence:

(1)     That Siemens made a representation of a material fact to Mr. Davis;

(2)     That the representation was false;

(3)     That Siemens either knew the representation was false or made it recklessly;

(4)     That Siemens made the representation to induce Mr. Davis to act upon it (in other words, that Siemens intended to deceive Mr. Davis);

(5)     That Mr. Davis acted in reasonable reliance on the representation; and

(6)     That Mr. Davis suffered damages as a result.

---

[5]This is a diversity case and, accordingly, Kentucky's substantive law governs the analysis and interpretation of the legal sufficiency of his state-law claim of fraud. *See*, *e.g., Moore, Owen, Thomas & Co. v. Coffey*, 992, F.2d 1439, 1444 (6th Cir. 1993).

*See* Jury Instruction No. 1 (docket no. 109).  In its post-trial motion Siemens does not dispute that the evidence was sufficient to establish, clearly and convincingly, that it made a representation of a material fact to Mr. Davis or that he would have suffered damages if his claim of fraud was sustained by the jury, and it does not contest (presumably for the purposes of the motion) that the statement was false.  Rather, it asserts that Mr. Davis failed to prove by clear and convincing evidence the third through fifth enumerated elements of the claim above.

The court will assume, for the sake of argument only, that Mr. Davis sufficiently proved at trial the third and fourth elements of his fraud claim (*i.e.*, that Siemens knew that Mr. Spotts's alleged oral representations regarding Mr. Davis's commission structure were false and that Siemens intended to deceive Mr. Davis into accepting its offer of employment, which included the Commission and Compensation Plan that contained a commission structure quite different from the one Mr. Spotts verbally described).  The court makes these assumptions because it is convinced that Mr. Davis did not, as a matter of Kentucky law, establish that Mr. Davis *reasonably* relied on Siemens's misrepresentations.

### III.

It has long been the rule in Kentucky that there can be no reasonable reliance on any misrepresentation that a party knows or should have known is inaccurate.  *See Mayo Arcade Corp. v. Bonded Floors, Co.*, 41 S.W.2d 1104 (Ky. 1931).  The corollary to that rule – namely that as a matter of law there can no be no misrepresentation of any issue that is contradicted by the terms of a written contract – is also a venerable part of Kentucky law, and is precisely applicable in this matter.  *See, e.g., id; Vest v. Goode,* 209 S.W.2d 833 (Ky. 1948).

Mr. Davis asserts that Mr. Spotts orally promised him that he would receive commissions on all sales made to national accounts, regardless of whether he or another salesperson was

directly responsible for making the sale.[6]  The Compensation and Commission Plan subsequently

sent to and accepted by him, however, stated only that he would receive commissions on sales

for which he and he alone was personally and directly responsible.  At the time Mr. Davis

accepted his written offer, and its corresponding Commission and Compensation Plan, he

apparently labored under the misperception that there was no conflict between the oral

representations and the written Plan.[7]  As the district court correctly determined in the ruling on

summary judgment, this misperception was not reasonable, as the terms of the written Plan are

both clear and unambiguous.  If Mr. Davis was presented with a Plan whose commission

structure could reasonably be interpreted in only one way, and that way directly contradicted the

oral representations allegedly made by Mr. Spotts concerning his commission structure, it

necessarily follows that Mr. Davis's reliance on the oral representations was not reasonable,

once he was presented with, and accepted his written job offer.[8]  Thus, pursuant to Kentucky

law, and as a matter of law without regard to any other evidence that may have been presented at

trial, his claim of fraudulent misrepresentation fails.  *See Mayo*, 41 S.W.2d at 1108-1109; *Vest,*

209 S.W.2d at 58-59; *see also Moore*, 992 F.2d at 1447.

       Given this determination, this court must now reconcile its current analysis of Mr.

Davis's claim with the original judge's prior opinion that, at least implicitly, determined that the

reasonableness of Mr. Davis's reliance was legally sufficient to proceed to trial.  As noted

---

[6]Mr. Spotts testified that he told Mr. Davis that he would be paid according to the terms of the written plan. *See* Tr. vol. III-A at 79-80; Tr. vol. III-B at 83-84, 103.  In construing the evidence in the light most favorable to Mr. Davis, however, the court will disregard this testimony.

[7]*See* Tr. vol. II-A at 32-33; Tr. vol. II-B at 63; Tr. vol. III-A at 21; Pl's Resp. Mem. at 8 n.2 (docket no. 116).

[8]Although there is testimony that suggests that Mr. Davis may not have read his contract documents (*see* Tr. vol. IIB at 92, lines 4-5), in Kentucky, as elsewhere, a person is legally presumed to have read any contract he executes, *see, e.g., Mayo*, 41 S.W.2d at 1109.

previously, however, the district court did not explicitly evaluate any element of the fraudulent misrepresentation claim, except whether there existed a question of fact regarding the *making* of a false statement.  Rather, the court's focus was on whether representations as to future conduct would support a fraud claim, and whether the claim was barred by the economic loss doctrine.

"The [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.  Law of the case directs a court's discretion, [however,] it does not limit the tribunal's power." *Arizona v. California,* 460 U.S. 605, 618 (1983)(internal citations omitted).  Application of the law of the case doctrine is a procedural issue to which federal law applies, *McDonald v. Petree,* 409 F.3d 724, 730 n.2 (6th Cir. 2005), and the Sixth Circuit has recognized that "the law of the case doctrine is discretionary when applied to a coordinate court or the same court's own decisions." *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir.1998) (citing *United States v. Todd*, 920 F.2d 399, 403 (6th Cir.1990)); *see also In re Kenneth Allen Knight Trust*, 303 F.3d 671, 677-78 (6th Cir. 2002) (doctrine is discretionary when a court reviews its prior erroneous decision).  Indeed, the Sixth Circuit has gone so far as to say, "[a]t the trial court level, the doctrine of the law of the case is little more than a management practice to permit logical progression toward judgment. Prejudgment orders remain interlocutory and can be reconsidered at any time." *Gillig v. Advanced Cardiovascular Sys.*, 67 F.3d 586, 592-93 (6th Cir.1995) (quoting MOORE'S FEDERAL PRACTICE ¶ 0.401 (2d ed.1994)).  Consequently, the law-of-the-case doctrine does not remove a trial court's jurisdiction to reconsider, or otherwise preclude a trial court from reconsidering, an issue previously decided in the case by another judge. *See id*. at 590.

Having reconsidered whether Mr. Davis's fraudulent misrepresentation should have survived summary judgment, this court concludes that it should not have.  The claim is not

viable (and was not viable at the time of the prior ruling) because the contract Mr. Davis read and accepted directly contradicted Mr. Spotts's prior oral promises with respect to a material fact (his commission structure) that constituted the particular inducement for Mr. Davis to accept his new job.  In Kentucky, under these circumstances, there can be no fraudulent misrepresentation.

## IV.

Even if Mr. Davis's fraud claim did not fail as a matter of law, however, the court would set aside the jury's verdict.  As noted above, the applicable standard for doing so is whether any reasonable juror could have found for the plaintiff.  The court does not suggest that the jury did not perform its duty carefully, but mere reliance is not sufficient to support Mr. Davis's claim, and there exists no testimony in the record that explicitly pertains to the *reasonableness* of Mr. Davis's reliance on Mr. Spotts's oral representations regarding his commission structure.  In addition, there is scant other testimony that would clearly and convincingly permit a reasonable juror to find reasonable reliance.

Mr. Davis testified that he would not have taken the job without the potential to earn a significantly greater income than he currently made,[9] but that only establishes that he relied on the misrepresentation, not that his reliance was reasonable.  Indeed, the weight of the trial evidence that his reliance was not reasonable.  Mr. Davis admitted that before he accepted his new job he received and read his offer and Compensation and Commission Plan, which offered him a substantially lower base salary than he was currently earning and included only a one-year guaranteed supplement to his salary that, in total, promised only a modest guaranteed increase in pay for a substantial increase in responsibility.  Mr. Davis's fellow salespeople, whom he presented as witnesses, testified that salespeople at Siemens thoroughly knew their own

---

[9]Tr. vol. II-A at 14, 23; Tr. vol. II-B at 53-54.

Compensation and Commission Plans because those plans determined how much they would earn.[10]  Moreover, the evidence clearly established that there was a monumental difference between the commissions Mr. Davis allegedly was promised if he would accept the job, and the commissions to which his written job offer contractually entitled him.[11] Lastly, Mr. Davis has previously worked as a salesman for Siemens, so the system could not have been new to him.[12]

Granted, there was testimony that "[d]eals go down all the time where salespeople have nothing to do with a project coming in and they get paid,"[13] but that testimony was quite limited, was not elaborated on or duplicated by any other witness, and was contradicted by Mr. Davis's own admission that no one at Siemens ever told him that his eligibility for commissions would be different than what was expressed in the terms of his written Plan.[14]  Accordingly, given that the contractual terms of Mr. Davis's Compensation and Commission Plan were clear and unambiguous with respect to his commission structure, there simply was not enough evidence to permit a reasonable juror to determine that Mr. Davis had met his heightened burden of clearly and convincingly proving that his reliance on Mr. Spotts's oral promises was reasonable once he reviewed the Plan.[15]

---

[10]*See, e.g.,* Tr. vol. I-B at 71-72. None testified that they knew the terms of Mr. Davis's Plan (*see, e.g.,* Tr. vol. I-B at 35, 81).  They also testified that it would have been an "anomaly" for two product sales executives to earn commissions on the same sale (*see* Tr. vol. I-B at 38, 87).

[11]*See* Tr. vol. II-B at 53-54.

[12]*See* Tr. vol. I-B at 43.

[13]*See* Tr. vol. II-B at 70.

[14]*See* Tr. vol. II-B at 83.

[15]The court also notes with curiosity that plaintiff does not argue in his response to Siemens's post-trial motion that Mr. Davis's reliance was reasonable, except to state that it was in a section heading, and to make a passing reference in another section pertaining to the falseness of Mr. Spott's statement.  *See* Pl's Resp. Mem. (docket no. 116).  He points to no evidence that clearly supports this assertion and makes no direct argument.  If he, with the aid of the written record, and the clarity of hindsight cannot establish the reasonableness of his own reliance, the court is hard pressed to determine how the jury could have done so.

**V.**

  This case should not have proceeded to trial and, having proceeded to trial, should have concluded with the granting of Siemens's initial motion for judgment as a matter of law.  That did not happen and, once a jury has been allowed to reach its decision, that decision should not be overturned without a thorough and exacting review of the law and the record, coupled with careful, deliberate, and thoughtful consideration.  That has now been done and the court finds that the jury's verdict should be set aside and judgment as a matter of law entered in favor of Siemens.

  The court will enter a separate order consistent with this memorandum opinion.

  DATE:

cc: counsel of record